Davis v. Brown.

CASE 78—PETITION ORDINARY—OCTOBER 26.

| 98 | 475 |
| d104 | 824 |

| 98 | 475 |
| 133 | 815 |

# Davis v. Brown.

APPEAL FROM OWEN CIRCUIT COURT.

1. CONTRACT IN RESTRAINT OF TRADE.—A contract not to sell buggies in a particular town, is not in such restraint of trade as to render it void.

2. SAME—LIMITATION.—A suit to recover damages for breach of such a parol contract is barred after the lapse of five years from the date of the contract, the defendant having continuously disregarded the contract from the time it was made. The fact that the breaches for which the plaintiff seeks to recover occurred within five years before the action was instituted does not prevent the statute from operating as a bar.

3. EVIDENCE.—The defendant having denied the making of the contract sued on, it was error to permit plaintiff to prove statements made by defendant relating to another contract.

4. MISCONDUCT OF ATTORNEY IN ARGUMENT TO JURY.—It was error to permit plaintiff's attorney to comment in his argument to the jury upon defendant's demurrer to the petition, and to explain why the plaintiff had not sued sooner.

5. LIMITATION MUST BE PLEADED.—The defendant could avail himself of limitation as a defense only by answer. Therefore, his demurrer to the petition was properly overuled.

LINDSAY & BOTTS FOR APPELLANT.

1. The contract declared on is within the statute of frauds and to be valid should have been in writing. (Greenwood v. Strother, 91 Ky., 482.)

2. The contract declared on if enforceable at all could only be enforced within five years, and it appearing from the petition that it was made, if at all, in 1885, and there being no obstruction to the statute shown, the demurrer for that reason should have been sustained. (Greenwood v. Strother, 91 Ky., 482; King's Ex'or v. Hanna, 9 B. M., 369; Myles' Ex'or v. Myles, 6 Bush, 237.)

3. The court erred in overruling appellant's motion for a peremptory instruction, because the proof of defendant showed, if anything,

a contract other than that pleaded, and the contract being one not in partial restraint of trade was void absolutely. (Cincinnati Railway Co. v. Barker, 14 Ky. Law Rep., 143; Jones' Adm'r v. Cole, 13 Ky. Law Rep., 636; Harris v. West Co., 13 Ky. Law Rep., 334; Bullock v. Secrest, 10 Ky. Law Rep., 281; Jackson v. Robinson & Co., 7 Ky. Law Rep., 142; C. B. & Q. R. Co. v. Wilcox, 4 Ky. Law Rep., 738; Howard v. Childs, 8 B. M., 377; Adams v. Brown, 4 Litt., .7; Banister v. Weatherford, 7. B. M., 271; Bull v. McCray, 8 B. M., 425; Menifee v. Morrison, 1 Dana, 209; Rogers v. Estes Litt. Sel. Cas., 2; Correll v. Collins, 2 Bibb, 429; Erwin v. Devine, 1 J. J. M., 204; Cochran v. Tatum, 1 J. J. M., 394; Barbour v. Pate, 2 Mon., 7; Rogers v. Gresham, 5 Dana, 540; Kearney v. City of Covington, 1 Met., 339; Gossom v. Badgett, 6 Bush, 101; Henderson v. Richards, 1 J. J. M., 490; Merriwether v. Merriwether, 3 Litt. Sel. Cas., 419; Cain v. Flynn, 1 Duv., 144; Vance v. Royster, 1 Bibb, 45; White v. Commonwealth, for, &c., 3 Dana, 467.)

4. The court erred in admitting testimony as to what was said by appellant and appellee in making another trade. (Cincinnati, &c., Ry. Co. v. Barker, 14 Ky. L. R., 143.)

GEO. C. DRANE ON SAME SIDE.

1. The petition is fatally defective, because it is not alleged therein that plaintiff continued to engage in the business of selling buggies at Owenton and in Owen county, the undertaking of defendant being that he would not interfere with plaintiff's business of selling buggies.

2. The demurrer to the plea of limitation should have been overruled. The plaintiff sued upon an *entire* contract, declaring upon a general or continuous breach which commenced according to the averments of his petition, in 1885, and continued as one act until 1893, when this action was commenced. (1 Sedgwick on Damages (7th ed.), 203, 477, 479; Schell v. Plumb, 55 N. Y., 596; Wilder v. Seely, 8 Barb., 412.)

E. E. SETTLE FOR APPELLEE.

1. The contract was not within the statute of frauds for the reason that it might have been performed within a year. (Stowers v. Hollis, 83 Ky., 548; Howard v. Burgen, 4 Dana, 137; Myles v. Myles, 6 Bush, 237; Fain v. Turner, 14 Ky. Law Rep., 478; Roberts v. Rockbottom Co., 7 Met. (Mass.), 46; Lyon v. King, 11 Met. (Mass.), 411; Foster v. McO'Blenis, 18 Mo., 88; King's Ex'or v. Hanna, 9 B. M., 369.)

2. The action is not barred by limitation, as there was no right to sue until there was a breach and the plaintiff seeks to recover for breaches within the five years prior to the bringing of the suit.

Greenwood v. Strother, 91 Ky., 482, distinguished.

3. The contract was proved as alleged. It is manifest that the parties understood the contract to have reference to the buggy business at Owenton.

4. The testimony of Herndon as to the conversation between the parties was competent, just as it would have been competent to prove any statement of Davis that threw any light on the previous transaction between him and Brown.

SAME COUNSEL IN PETITION FOR REHEARING.

1. The defendant did not plead the five years' statute of limitation, and in the very nature of things could not do so to a petition which alleged breaches within five years.

Plaintiff had no cause of action upon the original contract, until it was violated. (Myles' Ex'ors v. Myles' Ex'ors, 6 Bush, 237.)

2. The contract was a continuing one, and, therefore, susceptible of many breaches. Davis was not discharged from his contract by the first sale of buggies. (Civil Code, sec. 636; 1 Sedgwick on Damages, 8th ed., secs. 88, 89, p. 124; Hunt v. Tibbetts, 70 Me., 221.)

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

On the 29th of May, 1893, the appellee, Walter Brown, instituted this suit in the Owen Circuit Court against the appellant, A. B. Davis, to recover $2,500 damages for alleged breach of contract. The material averments in the petition are as follows: Plaintiff states that about the —— day of 1885, he and the defendant were both engaged in business in the town of Owenton, Ky., the plaintiff then carrying on the general furniture and undertaking business, and also the sale of wagons and buggies, the defendant, A. B· Davis, at the time being also engaged in the selling of wagons and buggies. That in consideration that this plaintiff would then sell out to him the furniture and undertaking business, and the further agreement on plaintiff's part not again to engage

therein in Owenton and Owen county, the defendant, A. B.
Davis, agreed from that date to cease to sell buggies in said
county, and agreed that he would not again carry on said
trade or offer any more buggies for sale, or interfere with the
plaintiff in said business.   Said agreement was in parol, and
that, thereupon relying on said agreement and contract this
plaintiff sold out to defendant all his furniture and undertak-
ing supplies, and in good faith abandoned said business, but
that the defendant, Davis, not regarding his own promise and
agreement, continued to sell buggies in said town and county
from that time until the present time to the great injury and
detriment of the plaintiff's trade, and to his damage in the
last five years in the sum of $2,500, wherefore he prays judg-
ment against defendant for $2,500 and costs.

Defendant entered a general demurrer to the petition,
which was overruled by the court.

The defendant filed his answer and in the first paragraph
traversed all the allegations of the petition, except that he
had been selling buggies for the last twenty years.

In the second paragraph defendant pleaded and relied on
the statute of frauds and perjuries.

The third paragraph pleaded the statute of limitation.
The plaintiff demurred to each paragraph of the answer,
which demurrer was overruled as to the first paragraph,
and sustained as to the second and third paragraphs.

At the conclusion of plaintiff's evidence the defendant
moved the court for a peremptory instruction to the jury to
find for defendant, which motion was overruled, and, after-
wards, a verdict and judgment was rendered in favor of
plaintiff for five hundred dollars.   The defendant moved for
a new trial, filing grounds therefor, fifteen separate grounds
being relied on.

The appellee in answer to appellant's contention that the

contract being in parol is within the statute of frauds, and, therefore, not enforceable, cites several cases, which seem to hold that if the contract could possibly be performed within a year, although not so contemplated, yet it is valid.  For example, a contract to care for one during life, to devise at death, to saw or manufacture so much timber.  (Stowers v. Hollis, by, &c., 83 Ky., 548; Howard's Adm'r v. Burgen, 4 Dana, 137; King's exor's v. Hanna, 9 B. M., 369; Myles v. Myles, 6 Bush, 237, and other authorities.)

We need not, however, decide whether the doctrine therein announced should be held to apply to the case at bar.

Appellant insists that his demurrer should have been sustained to the petition.  And that contention brings before us the question as to whether or not the alleged contract was void or illegal by reason of being in restraint of trade.  A contract on the part of appellant to not engage in the buggy business in Owenton, Owen county, was not void as being in restraint of trade, and appellant in order to avail himself of the plea of the statute of limitation must plead the same.  Hence we are of opinion that the demurrer was properly overruled.

Appellee's testimony fails to show for what length of time appellant agreed to quit the buggy trade.  The statement is that he agreed to quit the sale of buggies, but if we take that as an agreement to abandon it forever, yet the fact remains, as clearly shown by appellee, that appellant did not cease to deal in buggies, and that he was fully aware of that fact, and that much more than five years had elapsed from the breach of contract before this suit was instituted, and the material question is whether or not the action was barred by the five year statute of limitation.  Appellee insists, and the court below so ruled, that he could recover for all damage that had

accrued by reason of appellant's violation of the contract within five years next before the institution of this suit.

If that contention be true, it would follow that each sale of a buggy would be a violation of the contract for which a suit for damages might be maintained, and that the contract, although constantly broken, would never be barred, and that, if appellant lived for forty years and sold a buggy every day, appellee could maintain 14,600 suits against him for damages.

It seems to us that no such construction can be legally given to the contract. The alleged contract was that appellant was to cease selling buggies in Owenton and Owen county, and the testimony of appellee is that such was the contract, and that appellant never ceased, but continued to sell. It seems that he was at Louisville a while and while there did not sell, but at what period he was there does not appear. It is certain that he commenced to violate the contract immediately after the making thereof, and never did regard it, and that appellee knew of the violation.

It seems to us that the contract must stand on the same footing of other verbal contracts. The appellee had a cause of action so soon as the contract was violated, and his right to maintain same continued for five years from the first breach and no longer, and that only one suit could be brought for a breach of the contract, and in it appellee would be entitled to recover such damages as he could reasonably show to have been caused by the non-performance of the contract.

It might be difficult to show the amount of damages, but that can not change the law. It is often difficult to show the damages resulting from a breach of contract.

If appellant had obtained possession of a buggy or other personal property of appellee at the time of making the con-

tract and had openly held and claimed it as his own up to the time of the bringing of this suit, his right and title thereto would have been complete. Why was not his right completely restored to him to sell his own buggies and follow a trade or occupation?

In the case of Brown v. Houdlette, &c., 10 Maine, 407, in discussing a question of limitation for breach of the conditions of a bond where there had been two breaches and a plea of the statute of limitations relied on, the court says: "It would seem to be a correct position that as soon as the plaintiff acquired a perfect and complete right of action, the defendant also at the same time acquired an interest in the commencing protection of the statute."

The rule of law as to different trespasses or continued false imprisonments does not apply to a breach of a contract like the one under consideration.

It seems to us that plaintiff's claim was barred by limitation before the institution of this action, and the court below erred in sustaining plaintiff's demurrer to defendant's plea of the statute, and also erred in refusing the peremptory instruction asked by appellant.

For the errors mentioned the judgment of the court below is reversed and cause remanded, with direction to set aside the verdict and judgment and grant appellant a new trial, and for further proceedings consistent with this opinion.

On the 11th day of June, 1896, Judge Guffy delivered the following supplemental opinion:

The judgment in this case was reversed in October, 1895, after which appellee filed a petition for rehearing, and the court ordered a re-argument. In the former opinion the only question considered and decided was as to the efficacy of

the plea of the statute of limitation, but we will now consider at more length various contentions of the parties.

The petition is in the following language and was filed the 29th of May, 1893: "The plaintiff, Brown, states that on or about the —— day of ——, 1885, he and the defendant were both engaged in business in the town of Owenton, Ky., the plaintiff then carrying on the general furniture and under-taking business, and also the sale of wagons and buggies, the defendant, A. B. Davis, at the time being also engaged in the selling of wagons and buggies.

"That in consideration that this plaintiff would then sell out to him the furniture and undertaking business, and the further agreement on plaintiff's part not again to engage therein in Owenton and Owen county, the defendant, A. B. Davis, agreed from that date to cease to sell buggies in said county, and agreed that he would not again carry on said trade or offer any more buggies for sale or interfere with the plaintiff in said business. Said agreement was in parol, and that, thereupon relying on said agreement and contract, this plaintiff sold out to defendant all his furniture and undertaking supplies, and in good faith abandoned said business, but that the defendant, Davis, not regarding his own promise and agreement continued to sell buggies in said town and county from that time until the present time to the great injury and detriment of the plaintiff's trade, and to his damage in the last five years in the sum of $2,500.

"Wherefore he prays judgment against defendant for $2,500, and costs.

"E. E. SETTLE, P. Q."

The defendant filed a demurrer to the petition, which reads as follows: "The defendant, A. B. Davis, comes and by his attorneys demurs to plaintiff's petition, because the

same does not state facts sufficient to constitute a cause of action against this defendant.

"LINDSAY & BOTTS,

"<i>Attorneys for Defendant.</i>"

The demurrer was overruled and defendant excepted, after which defendant filed his answer, which is in the following language: "'The defendant denies that in consideration that the plaintiff would then sell out to him the furniture and undertaker's business, or either, or the further agreement on plaintiff's part not again to engage therein in Owenton or Owen county, this defendant agreed from that day, viz., ——day of ——, 1885, or from any date or time to cease to sell buggies in said county or agreed that he would not again carry on said trade or offer any buggies for sale or interfere with plaintiff in said business, or that plaintiff relying on said agreement or contract, or that there was any such contract or agreement, or that plaintiff relying on any such alleged contract or agreement, sold out to defendant, or that plaintiff sold out to defendant at all, all or any part of plaintiff's furniture or undertaking supplies, or in good faith or at all, abandoned said business, or that this defendant did not regard any of his words, promises or agreements, that he made, and again denies having uttered or made any such alleged promise, word or agreement, but admits selling buggies, wagons, etc., for the last twenty years or more.

Defendant denies that plaintiff has been injured or suffered any detriment by means of any violated word, promise or agreement of the defendant during the last five years or any other time in the sum of $2,500, or in any other sum.

"2. Defendant for further answer herein, and still denying the alleged compact and agreement declared on, states that if ever such contract had been made, it being claimed by plaintiff that it was by parol and alleged by plaintiff to have

been made in 1885, and plaintiff's petition having been first
filed on May 29, 1893, and more than eight years after the
alleged contract is by plaintiff alleged to have occurred,
that plaintiff's declaration being upon an alleged agree-
ment which is not to be performed within one year from the
making thereof, unless the same or some memorandum or
note thereof be in writing and signed by defendant, plaintiff
can not have or longer maintain this action.

"3. Defendant further states that while still denying the
alleged contract or agreement states that more than five years
have elapsed since the contract declared on by plaintiff is
alleged to have been made and next prior to the institution
of plaintiff's action, and defendant pleads and relies on the
statute of limitation in such cases made and provided.

"Wherefore, defendant prays that plaintiff's petition be
dismissed, for his costs, and for all further and proper re-
lief, etc.

"LINDSAY & BOTTS,
"*Attorneys for Defendant.*"

Plaintiff then demurred to each of the three paragraphs
of the answer, which, being considered by the court, was
overruled as to the first paragraph, and sustained as to the
second and third paragraphs, with exceptions.

A trial resulted in a verdict and judgment in favor of
plaintiff (appellee here) for $500, and afterwards the appel-
lant moved for a new trial, and filed grounds in support of
the motion, which are as follows:

"1. Because the court erred in overruling defendant's
demurrer to plaintiff's petition.

"2. Because the court erred in sustaining plaintiff's de-
murrer to the second and third paragraphs of defendant's
answer herein.

"3. Because the court erred in overruling defendant's ob-

jection to and permitting incompetent evidence to be heard by the jury in this, in permitting the witness, J. M. Herndon, to state that he, as agent of defendant, went to plaintiff at the time, long subsequent to the making of the contract which plaintiff declared on, and is and about a contract with other parties (J. C. Hartsough, etc.), to which ruling of the court defendant at the time excepted and still excepts.

"4. Because the court erred in giving to the jury as the law of the case instructions Nos. 1, 2, 3 and 4, and to the giving of each and all of which defendant at the time excepted and still excepts.

"5. Because the court erred in refusing to give to the jury as the law of this case the instructions asked for by defendant, and marked Nos. 1, 2, 3 and 4. To the ruling of the court in refusing each and all of said instructions the defendant at the time excepted and still excepts.

"6. Because the verdict and judgment are both and each not supported by, but are both and each flagrantly against, the evidence.

"7. Because the verdict and judgment are both and each against the law and evidence.

"8. Because the court erred in refusing to allow competent evidence to be heard by the jury.

"9. Because the court erred in permitting, over defendant's objections, incompetent evidence to be heard by the jury.

"10. Because the verdict is the result of passion and prejudice, and is excessive.

"11. Because of the misconduct of plaintiff's attorney while arguing and closing the case said to the jury that defendant had, by his attorneys, contended in the argument of the demurrer to plaintiff's petition sought, and the defendant sought to evade the contract because it was not in writing;

and, inasmuch as the defendant's attorneys now thought that the contract declared on could not be enforced because it was not in writing, the plaintiff's delay in bringing this action was to be excused because he did not know he could enforce his contract, all of which was objected to, and the court refused to rule on same, to all which defendant excepted at the time and still excepts, and by reason of which defendant was prevented from having and did not have a fair and impartial trial.

"12. Because the verdict is not sustained by the evidence.

"13. Because the verdict and judgment are both and each not only contrary to the law, as given by the court, but contrary to the law of the Commonwealth.

"14. Because the defendant has, since the rendition of the judgment and verdict herein, discovered material evidence which plaintiff could not and did not discover or produce at the trial of this cause. The affidavits that are herewith filed show the facts that J. C. Hartsough, and by Hartsough it will be proven that he (Hartsough) did, prior to his purchase of the furniture and undertakings from Miss Stamper, and being apprised of Brown's threat that if Stamper sold to Hartsough he (Brown) would engage in said business, said Hartsough expressly stated to Davis that 'if he' (Brown) 'is trying to force you to cease the buggy business, you just let him engage in it. I will fight him, and don't you in any way make any contract with him.'

"15. Because the defendant has, since the rendition of the verdict and judgment herein, discovered new, important and material evidence in his behalf, which he could not, with reasonable diligence, have discovered or produced at the trial.

LINDSAY & BOTTS,
*"Attorneys for Defendant."*

The motion for a new trial being overruled, appellant excepted and prosecutes this appeal.

The third paragraph of defendant's answer pleads or attempts to plead the five-years' statute of limitation as a bar to plaintiff's claim, and he insists in his brief that the plea is a complete bar to the action, while appellee insists that the answer is no plea of the statute because he seeks to recover only for damages sustained during the last five years, which he assumes to be his cause of action.

It will be seen from the petition that the contract sued on or set up in the petition was in parol, and made and entered into in 1885, and that it had been continuously disregarded and violated by appellant from that date up to the institution of the suit in May, 1893, which violation was known to plaintiff. If, therefore, the statute could be interposed as a defense the plea was sufficiently explicit, but appellee contends that he could at any time sue and recover damages for the selling of buggies accruing within five years prior to the institution of the suit. If that contention be sound law, then it follows that Davis might have enjoyed and exercised the right to continue the business of selling buggies for fifty years, and yet appellee could have sued him and recovered damages for the selling done the last five years of that period.

Chapter 71, article 3, section 1 of the General Statutes (Ky. Stats., sec. 2514), which must govern the contract in question and the rights growing out of it, says: "Civil actions, other than those for the recovery of real property, shall be commenced within the following periods after the cause of action has accrued, and not after."

The section proceeds to enumerate a number of causes upon which action may be brought within fifteen years. Section 2 of the article *supra* provides that an action upon a

contract, not in writing, signed by the party, shall be commenced within five years next after the cause of action accrues. (Ky. Stats., sec. 2515.)

By what right or authority does Brown sue Davis for carrying on the trade of selling buggies? Manifestly there can be but one answer to the question, and that must be because, for a valuable consideration, Davis contracted with Brown to quit the business, and not again engage in it, and that is just what the petition alleges that Davis did do.

When was that contract made, and was it in writing? The petition says it was in parol, and made in 1885.

The next question is: When, if at all, did Davis violate the contract? The petition alleges that he commenced to violate it as soon as it was made, and so continued up to the commencement of this suit, viz, 29th of May, 1893, much more than five years after the breach or violation, but appellee says, "I do not seek to recover for any selling except for the last five years."

Suppose plaintiff had only alleged in his petition that defendant had for the last five years past sold buggies in Owenton, to the damage of plaintiff in the sum of $2,500, could he have recovered? Certainly not; but he seeks to recover by going back and relying upon a parol contract made more than five years before, and continually disregarded and violated by defendant, all of which the petition and plaintiff's own testimony shows was well known to plaintiff.

If Davis had taken possession of a buggy, the property of Brown, and held it five years as his own, his title would have been perfect. Is it possible that he could not, within the same length of time, acquire, by use or proscription, the right to sell his own buggies—to continue the business he

had theretofore followed, even if by parol contract he agreed to cease to do such business?

If appellant had taken and held adversely a house and lot, the property of appellee, for fifteen years his title would have been complete, and appellee would have been without remedy; yet if the law is as contended for by appellee, he could have remained quiet for fifteen or twenty years, while Davis continued to disregard the contract, and then sue and recover.for the violation of the last five years. But it is said that each selling is a violation of the contract. The same may be said as to the tortious or illegal taking and holding of the house and lot. Every day that it was so held would be a wrong for which plaintiff could have recovered until the fifteen years expired; after that time he had no title. It would be extinguished by the adverse holding, and the title and right to the same vested in the holder. Has not appellant, by the more than five years' adverse exercise of his trade, extinguished the right of appellee to interfere with him?

It has been repeatedly held by this court that thirty years' adverse holding of real estate gives the holder a perfect right and title thereto against all the world, but if the law of this case is as claimed by appellee, his parol contract is more efficacious than recorded title to real estate.

It has been repeatedly held by this court that a party may, by fifteen years' adverse use, acquire a right to a passway through another's land, and the use may be such as to imply or evidence a claim of right (Talbot v. Thorn, 91 Ky., 417), but if appellee's contention be true, a party can never acquire a right to follow a trade or calling by the adverse exercise of it. Exercising the right to trade will always be presumed to be done under claim of right.

In Williams v. Williams, 89 Ky., 385, this court, in dis-

cussing the statute of limitation, said: "The statute of limitation is founded upon the idea that if one has a right, and neglects to avail himself of the remedy which the law affords within the time limited, it is to be presumed he has abandoned the right."

In the case at bar appellee, by his own showing, neglected to enforce his right or remedy for more than five years. He could not recover in the suit unless he had a valid or enforceable contract.

Appellee in his petition for rehearing refers to sections 87, 88 and 89 of Sedgwick on Damages, eighth edition. It is true that section 89 says that in a suit to recover for breach of contract not to engage in business, recovery can only be had for the damage sustained up to the time of institution of suit, and the only authority given for that statement is Hunt v. Tibbetts, 70 Maine, 221; and that case is no authority in this, for there was no question of limitation involved. Hunt v. Tibbetts was a suit brought by plaintiff upon the written contract of defendant not to continue or engage in a certain business for a specified time, and, as part of the contract between plaintiff and defendant, plaintiff executed his note to defendant for a sum of money. Defendant violated his contract, and plaintiff sued. Only two questions were raised and decided. Defendant's contention was that he was not bound to quit the business until plaintiff paid the debt due him. The other question was as to the recovery. The court held that the two agreements were not dependent contracts, and that plaintiff could recover, but could only recover for the damages sustained up to the time of suit.

In Sutherland on Damages, volume 1, section 112 (not referred to by counsel), it is said: "Where the contract is indefinite as to time and negative in its character, successive

actions may be brought for violation; as where one, who has sold his interest in a business and agreed that he would not commence again in that place, violates his obligation."

The only case cited of a court of last resort in support of this doctrine is Pierce v. Woodward, 6 Pick., 206. An examination of that case will show that no question of limitation was raised or decided.

Both of the cases *supra* proceed upon the undisputed assumption that the contracts were in full force, and the doctrine therein announced is not at all in conflict with the contention of appellant, that the contract in the case at bar is barred by limitation, hence no recovery can be had for breaches of a contract barred by limitation.

We have not been referred to any case in which a second recovery has been allowed for a second breach of such a contract as the case now under consideration.

Many decisions may be found where one, and only one, recovery was allowed on a continuous contract.

In Fish v. Folley, 6 Hill, 54, it was held that where the defendant had covenanted, in 1822, that plaintiff should have a continual supply of water for a mill from his dam, and ceased to perform after 1826, and in 1835 plaintiff sued and recovered damages up to that time, it was held that his right to damages for future breaches was barred.

Mr. Sedgwick says (1 Sedgwick on Damages, p. 126), that a contract to support is ordinarily a continuing one, but that a breach of the same is often of such a character that the injured party may recover for prospective as well as past losses. And cites Wright v. Wright, 49 Mich., 624; Amos v. Oakley, 131 Mass., 413; Parker v. Russell, 133 Mass., 74; Shaffer v. Lee, 8 Barbour, 412.

It has also been held that in a case of violated contract for service that the plaintiff may usually sue before the

term of service expires and recover for his whole loss. (Sedgwick on Damages, volume 1, eighth edition, page 126, and the cases there cited, viz., Sutherland v. Myer, 67 Maine, 64; Lamareux v. Rolfe, 36 N. H., 33.)

In Elizabethtown, &c., R. Co. v. Combs, 10 Bush, 383, it was held that where the injury to real estate was permanent and continuous a single recovery could be had for the whole injury to result from the acts complained of. The same is true as to personal injuries.

We do not think that the contention that each sale of a buggy constituted a distinct cause of action for which suit might be brought is supported by sound reason or by the weight of authority. If such contention be true, it would follow that if appellant had lived forty years, and sold two buggies each day, one in the forenoon and one in the afternoon, plaintiff could have maintained more than twenty-five thousand suits against him. It seems to us that the contract in question could not have authorized such a multiplicity of suits. It is said that the law abhors a multiplicity of suits.

The alleged contract relied on by appellee was an entirety, viz.: That appellant would cease selling, and not again engage in that business, etc. It is alleged that appellant did not even commence to comply with the contract, but continuously violated it. For such violation appellee had a right to sue at any time within five years from the time that appellant was to commence performance, and instead of doing so began to violate the contract, and in such suit he could recover for such damages as he had sustained, and might also, by injunction, restrain appellant from further violation of the contract.

It is not necessary to determine whether he could recover for future damages or not. We do not think that a defend-

ant could defeat such right by offering to perform the contract in the future, nor would the mere fact that it would be difficult to arrive at the amount of damage for the future prevent recovery therefor, for almost the same uncertainty exists as to past damages, for unless the parties who bought from appellant would otherwise have bought from appellee, the latter would not have been damaged, but the real question now being considered is whether the contract relied on to enable appellee to recover was barred by the statute. It is confidently believed that no court of last resort has ever sustained the doctrine contended for by appellee.

Such contracts are not entitled to any special favor. It is fair to assume that most of them are made in order to stifle competition, and thereby increase the cost of the article to the consumer, and, besides, it is now the settled policy of the law to look with favor upon the statute of limitation as a statute of repose.

The case of Brown v. Houdlette, &c., 10 Maine, 407, is in principle not unlike the case at bar. The plaintiff in that case had sued for damages on breach of a bond. There had been two breaches; the bond only containing one penalty. The defendant pleaded the statute of limitation. The first breach was admitted to be barred by the statute, but the other was not. The court said: "It would seem to be a correct position that as soon as the plaintiff acquired a perfect and complete right of action that the defendant also at the same time acquired an interest in the commencing protection of the statute."

If it be true that a plaintiff may bring successive actions for violations of such contracts as the one relied on here, it seems clear that he can not bring one after the right under which he claims is barred. If he had sued before the expiration of the five years and recovered, that would have been

a judicial determination that the contract had been made, and would have been a renewal of the same, with the same effect that a judgment on a note is a renewal of the debt or obligation.

A note is barred in fifteen years after maturity. There is a legal obligation resting on the debtor to pay the interest that accrues thereon up to the end of the fifteen years. Independent of any other consideration that liability would be enforceable for five years; but will any one contend that the interest for the last five years on a note could be collected after the note was barred? Is not appellee seeking to do the same thing in principle?

It seems clear to us that appellee's contract was barred by the statute before the institution of the suit, and that the court erred in sustaining the demurrer to the paragraph pleading the bar, and also erred in refusing the peremptory instruction asked for by appellant.

Appellant complained of incompetent testimony being admitted. The appellee testified in chief as follows: "I am the plaintiff in this action. I have been living in Owenton since 1884; was in the buggy business at first, then went into the furniture, undertaking and livery business, but the buggy trade was my main business, and the business was carried on under the name of R. B. Brown, my brother, who lives in Warsaw, Ky., but I owned the stock. I sold the undertaking and furniture business to A. B. Davis, after running about a year. Mr. Davis asked me if I would sell; he said he wanted to buy for his daughter, Mrs. Stamper. He said to me 'You know I have to support her and her family, and I want to buy the stock and put her in charge of it.' He said if I would sell he would quit the buggy business. I told him under those terms I would. He paid me $500 and $147, and gave me his individual note for $500, due

in six months. He paid the note off, either in money or check, I don't know which. It was in the bank. I made no contract with anybody else. I delivered him the goods. No one was present when we traded. I had no trade with Mrs. Stamper. He run the store a year or more. Davis never quit selling buggies. I found out he never quit selling buggies. He finally wanted to sell out his furniture and undertaker's business, and he sent J. M. Herndon to me, and communicated to me a proposition from Davis, and just after that Davis sold out to J. C. Hartsough, and I never started up the furniture and undertaking business again. I would suppose Mr. Davis has sold 300 or 400 buggies since then. I have been damaged considerably. I had pretty near the buggy trade here. Davis was in Louisville awhile, and did not sell buggies while there. I made about $10 on a buggy; sometimes more, never less. I believe I could have sold most of the buggies he sold. Davis has had a salesroom for buggies in town for three or four years. At the time I sold out to him I was engaged in the furniture and undertaking business and livery business, and was full up with business, and that is the reason I wanted to sell to Davis."

CROSS-EXAMINED

"I had but one trade with Davis; that is the contract I am suing him on, and that was in the latter part of August or September, 1885. I made money in the furniture and undertaking business ($640). I was not anxious to sell. I had a great deal of other business. I did not get credit on my rent because I said I was not making money; but Holbrook and Davis, from whom I rented, failed to fix the house, as they agreed to do, is a reason why a portion of my rent was knocked off."

Witness was then asked to state all the facts, what was

said by each. Witness then stated: "Mr. Davis came in my place of business and asked me if I would sell out the business to him. I told him I would. He then said 'if you will, I will cease selling buggies.' "

Witness was then asked if that was all, and he answered "yes." Witness was then asked the following questions, to which he made the following answers, to wit:

*Question*—What were you to get for the furniture and undertaker's business?

*Answer*—He was to give me cost and carriage; no bonus.

*Q.*—How and when was this to be paid for?

*A.*—Cash for coffins and furniture. I was to take his note for $500 for the hearse, and I told Mr. Davis I would show them how to trim coffins.

*Q.*—Did you not, after you sold out to Mrs. Stamper or Davis, interfere with said business, and did you not take orders for coffins elsewhere, and do all you could to injure the business?

*A.*—Sometime after we made the trade I got an order from Tom Southworth for a coffin for one of his children. I took the order and went to the business house, and said to Dick Davis "I understand that your father has been selling buggies. Is that true?" And Dick said, "I suppose it is." I then said to Dick, "I have an order for a coffin, but the way your father has treated me I don't think I am under any obligations to give it to you," and I sent the order to New Liberty to my cousin, who is in the business. I never interfered with his business except this order, and I did send other parties to him.

J. M. Herndon was introduced and testified as follows: "Plaintiff asked witness, among other questions, if he had any conversation with defendant, A. B. Davis, in reference to selling a stock of furniture and undertaking goods to J.

S. Hartsough, in which he requested you to see Brown, the plaintiff, and before Hartsough bought the goods, in which he requested you to say anything to Brown, the plaintiff; and if so, state when it was, and what was said by Davis to you and you to Brown, and what all parties said.

"Defendant objected to said questions, and court overruled defendant's objection and permitted witness to answer, to which ruling of the court the defendant at the time excepted, and still excepts.

"Witness then answered as follows: The defendant, Davis, did come to me a short time before the furniture and undertaking business was sold to Hartsough, and asked me if I was on good terms with Walter Brown, and had any influence with him. I told Davis I was on good terms with Brown. Davis then said that Mrs. Stamper wanted to sell her furniture and undertaking goods, and that he could effect a sale of same to J. S. Hartsough if Walter Brown would agree not to set up a furniture and undertaker's business in opposition to Hartsough. And Davis requested me to go to Brown, and say to him that if Brown would promise not to set up the furniture and undertaking business in opposition to Hartsough that he (Davis) would not sell any more buggies. I went to Brown, saw and had a talk with him in the alley behind Herndon's hardware store and Lindsay's office, and communicated to Brown what Davis had said to me and Brown agreed to, but I don't remember all that Brown said. I then communicated to Davis what Brown said, and shortly after that Hartsough bought out the furniture and undertaker's business.

"Defendant moved the court to exclude said testimony, which motion the court overruled, to which ruling of the court the defendant at the time excepted, and still excepts.

"Plaintiff was recalled and testified as follows: Plain-

tiff asked witness to state any conversation which you had with Herndon at the time he came to you as testified to by him.

"Defendant objected, court overruled defendant's objections, and permitted witness to answer, to which ruling of the court the defendant at the time and now excepts.

"Herndon told me that Mrs. Stamper wanted to sell out her furniture and undertaking business, and could sell to Hartsough if I would agree not to start up the undertaking and furniture business again, and Davis would agree not to sell any more buggies if I would agree to that. I told Herndon that I had a contract with Davis once before, and he went back on it, but if he (Herndon) said so, would try him again. Herndon then said 'Davis pledges his word,' and I then said if you say so I will trust him.

"Defendant then moved the court to exclude said testimony from the jury, which motion the court overruled, to which the defendant excepted, and still excepts.

"Witness also stated 'he did not engage in the business in opposition to J. C. Hartsough.' "

The testimony of Herndon was clearly incompetent because it related to another contract, and was calculated to mislead and confuse the jury, and the testimony of the plaintiff when recalled was wholly incompetent. He not only was permitted to state what Herndon told him, but also to state what he said to Herndon. It will be seen that appellant denied the contract, and as a witness testified emphatically that no such contract was ever made, and the only person who testified to the existence of the contract was the appellee himself. It is, therefore, plain that the incompetent evidence was prejudicial to appellant's substantial rights. Hence the ninth ground for a new trial was well founded, and should have been sustained.

The eleventh ground for new trial is on account of misconduct of appellee's attorney. If it was competent at all for appellee to give any reason why he had not sued sooner, it should only have been allowed to be given by him, or some one else who knew the facts, on oath. It was error to allow plaintiff's attorney to comment before the jury on the demurrer of appellant. The other grounds relied on need not be discussed.

For the reasons indicated the judgment of the court below is reversed and cause remanded, with directions to set aside the verdict and judgment and award appellant a new trial, and for proceedings consistent with this opinion.

Chief Justice Pryor delivered the following dissenting opinion, June 11, 1896:

The facts alleged in the petition are these: Brown, the plaintiff, was engaged in selling furniture, and in the undertaker's business in the town of Owenton, and the defendant, Davis, was in the business of selling buggies. Davis agreed with Brown and Brown with Davis that he (Brown) would cease to sell furniture and the business of undertaker in the town of Owenton and Owen county, and Davis agreed in consideration thereof to cease to sell buggies in said county, and agreed that he would not again carry on said trade, or offer any more buggies for sale, or interfere with the plaintiff in said business. Relying on said agreement the plaintiff sold out his furniture, etc., to the defendant and in good faith abandoned said business, but the defendant, not regarding his promise, continued to sell buggies in the town and county from that time until the present time to the injury of plaintiff's trade and to his damage for the last five years in the sum of $2,500.

There was a demurrer to the petition and overruled.

Whether or not the petition was defective because of the failure of the plaintiff to allege that he had continued in the business of selling buggies up to the time of the action, or should have been more specific as to the buggies sold for the last five years, are questions not discussed in the principal opinion, and I am inclined to think such averments should have been made, but concur with the majority in holding that certain testimony was incompetent, but dissent from the conclusion that the cause of action originating from the first breach enabled the defendant to plead the statute of limitation of five years when sued for a breach committed within five years.

Such a contract as is alleged to have been made in the petition is what is denominated a continuing contract, and for every violation of it an action may be maintained.    It is unlike a breach of the covenant of seizin, or cases where, by the nature of the agreement, full damages may be recovered for all the injury sustained, present and prospective, such as injuries to buildings by running so near with steam engine as to make the injury permanent.    In all such cases one recovery is a bar to the same cause of action.

Here the sale of one or half dozen buggies would not authorize a recovery of a sum sufficient in damages to compensate plaintiff for the injury.    The defendant might answer and admit the breach, and allege that he would thereafter cease to sell buggies, and the only recovery would be for the damages sustained up to that time, or the plaintiff might so frame his petition as to recover all the damages he had sustained or might thereafter sustain, because of the purpose of the defendant to continue the business; but such is not the petition in this case, and, when the plaintiff sued for the violation of the contract within five years, the defense interposed is that there was a breach of the contract

Davis v. Brown.

on the day it was made, and a breach every day since.   The defendant starts the statute to running by committing a breach, of which the plaintiff does not complain, and which, if knowing of its commission, he is willing to condone.   If this contract had been in writing, and the plaintiff had alleged that after the expiration of fifteen years from its execution the defendant sold buggies in violation of the agreement, would it have been competent for the appellant to have relied on the statute of limitation by pleading that he committed a breach every day of the week following the execution of the agreement, and that more than fifteen years had elapsed from the date of these several breaches to the breach complained of.   Or if there had been no allegation in the present petition of a breach on the day it was made, but an action to recover for breaches within five years next prior to the institution of the suit, could the defendant rely on the statute of limitation by pleading that he had committed breach after breach every day for a year after the contract had been made, and that from those violations or from the last breach up to the one complained of more than five years had elapsed, and, therefore, time is a bar to the recovery?

I am satisfied no such defense could be interposed, and if so the fact that breaches are assigned or alleged in the petition, and for which no recovery is sought, can not be held to aid the plea of the statute by the defendant.   In other words, if the pleader had set forth the parol contract and its breach every year for several years, and further alleged that within the last year prior to the institution of the action he had sold buggies 1, 2, 3 and 4, he could recover, although more than five years had elapsed from the date of the breaches for which no recovery had been sought.   The constant breaches might show an abandonment of the con-

tract or conduce to show that no such contract was ever made, a question not necessary or proper that I should determine.

In Howe, Receiver, v. Harding, 84 Texas, 74, the Houston East and West Texas Railway Co. made a contract with one Harding, by which the latter agreed to and did relinquish the right of way in consideration the company would erect and maintain a water tank, to be used by the railroad company, and for which appellee was to be paid as much as the company paid any other person on the line. The company removed the tank, and the appellee sued for the breach, alleging that other persons received $50 per month for such a privilege. After the removal the appellee sued the company for the $50 per month up to a certain time and recovered. He then brought another action for the consideration, arising subsequent to the first suit, and to the last action the plea of *res adjudicata* was interposed. It was held that the appellant was using the right of way, for the compensation agreed to be paid, and was liable as long as the company used appellee's land.

In the case before us the appellee ceased the business of selling furniture, and as long as he does so the appellant, if such a contract was made, is guilty of a breach of his contract every time he disposes of a buggy in the county of Owen, and can prevent a multiplicity of suits by complying with his contract. And if no breach had been committed for twenty years after the contract the appellant is liable for the breach, and cannot rely on the statute by pleading a continuous breach, but may rely upon such facts as show an abandonment, or that no such contract was ever made.

In Sedgwick on Damages, eighth edition, page 124, it is said: "Both in contract and tort, where the injury for which suit has been brought is repeated, a new action must

be brought to recover compensation for the new injury.   No
action can be brought to redress an injury before it happens;
consequently no injury will be redressed which was inflicted
after the date of the writ."

I dissent from the opinion.