**RIDDLESPERGER et al. v. MALAKOFF GIN CO. (No. 2410.)**

(Court of Civil Appeals of Texas. Texarkana. April 14, 1921. Rehearing Denied. April 21, 1921.)

1. **Judgment ⬅593—Separate actions maintainable for each breach of agreement on sale of cotton gin not to operate gin in community.**

Although a contract by which seller of a gin plant agreed to refrain from operating another plant in the community for an indefinite period of time is entire in the sense that such promise is single, it was subject to separate and distinct breaches for each of which damages is recoverable.

2. **Good will ⬅5—Contract held to pass good will by implication.**

Where party sold a gin plant agreeing not to engage in the ginning business in the community, the good will, though not mentioned in the contract, was conveyed; the character of the transaction being such as to pass it by implication.

3. **Judgment ⬅590(4)—Damages for continuing breach of contract not barred by application for injunction not issued until five years later.**

In buyer's action against seller for breach of agreement not to engage in the same business in the community, where a writ enjoining further violation was applied for but refused by the trial court but ordered five years later on appeal, defendants having violated the contract pending the entire appeal, plaintiff is entitled to recover for the injuries thus inflicted.

Appeal from District Court, Henderson County; John S. Prince, Judge.

Action by the Malakoff Gin Company against C. A. Riddlesperger and others. Judgment for plaintiff, and the defendants appeal. Affirmed.

J. J. Faulk and W. R. Bishop, both of Athens, for appellants.

Richardson & Watkins, of Athens, for appellee.

HODGES, J. In 1907 the appellants sold to the appellee their cotton gin plant in the town of Malakoff. The consideration expressed in the written contract was $4,000. The property conveyed was "our gin house and machinery, consisting of a complete gin and mill outfit, together with the building in which same is situated." The purchasers were also given the right to operate the gin and mill on the lot belonging to the vendors for 12 months after the sale. The contract contained this additional stipulation:

"And as a further inducement to said gin company, we, and each of us, do hereby covenant and agree with said gin company that during the time that they operate said gin or mill in the community in which Malakoff is situated that we will not directly or indirectly engage in or be interested in any other gin or mill in said community."

Some months thereafter the appellants, in violation of that agreement, established and began the operation of another cotton gin plant in Malakoff. In 1909 the appellee brought a suit for damages for the breach of that contract. By amendment before trial an injunction was sought restraining the appellants from continuing to operate their gin. That case was not tried until some time in 1912, and the damages sought were for the profits lost up to February of that year. In that trial the jury awarded the Malakoff Gin Company only $10 as damages, and the court refused the application for the injunction. On a final appeal the Supreme Court held that the writ should have been granted. A full report of the facts and the opinion rendered will be found in 108 Tex. 273, 192 S. W. 530.

In April, 1917, the Court of Civil Appeals, in accordance with the opinion of the Supreme Court, reversed the ruling of the district court and rendered a judgment granting the writ of injunction. Malakoff Gin Co. v. Riddlesperger et al., 194 S. W. 1182. This suit was filed by the Malakoff Gin Co. in August of 1917 to recover the damages which had resulted from the continued operation of a gin plant by the appellants for the years intervening between February, 1912, and the filing of this suit. The damage claimed is the lost patronage which the rival plant diverted from the appellee during those years.

Among other defenses, the defendants pleaded the statute of limitation of four years, and the former judgment. In a trial before the court the plaintiff recovered a judgment for $1,800 as damages accruing during the four years immediately preceding the filing of this suit.

[1] Practically the only question involved in this appeal is: Did the initial breach of the contract in 1907, or 1908, create one entire cause of action for all the damages which had then and might thereafter result from an infraction of the contract? In other words, was the appellee required to then treat the contract as at an end and to claim in one suit compensation for the loss of all the benefits which it acquired by the making of the contract? As justifying an affirmative answer to those questions, the appellants contend that the contract was entire and indivisible and for that reason its breach could not be made the basis of successive claims for damages. In support of that proposition they have cited the case of Davis v. Brown, decided by the Kentucky Court of Appeals and reported in 98 Ky. 475, 32 S. W. 614, 36 S. W. 534. The facts of that case show that Brown, the plaintiff, and Davis, the defendant, were merchants doing business in the same town. Brown was selling furniture, buggies, and wagons, and was also carrying on an undertaking business. Davis was selling wagons and buggies. Some time in 1885 they entered into a contract by which Brown sold his furniture and undertaking business to Davis, and the latter, as a part of the consideration, agreed not to further engage in the sale of buggies in that vicinity. In May, 1893, Brown bought suit for damages, alleging that Davis had continuously from the date of its inception disregarded and violated his contract not to further engage in the sale of buggies. A majority of the court held that the contract was entire and that its continued breach could not be made the basis of more than one cause of action; that Davis, by more than five years' adverse exercise of his trade, had extinguished the right of Brown to interfere with him. As supporting that proposition they refer to the rule which confers title to real and personal property upon one who has continued in the adverse possession thereof during the statutory period of limitation. Chief Justice Pryor, in an opinion which we regard as sound, dissented from that view. While agreeing to reversal of the case upon other grounds, he held that the plaintiff was not barred from recovering those damages which had accrued during the five years next before the filing of the suit. It is difficult to discover any analogy, when applying the law of limitation, between the prolonged adverse possession of corporeal property and the persistent pursuit of a business or trade. The abstract right to engage in a legitimate business enterprise is inherent, not acquired. It is lost only when voluntarily surrendered. When relinquished to another we know of no law of limitation which enables the grantor to regain it solely by a continued infraction of his contract of relinquishment. When the conduct of a business or calling involves the adverse possession and use of another's corporeal property, the right to possess and use that property may be acquired under the laws of limitation; but the legal right thus acquired attaches to the property, not to the intangible privilege apart from the property.

The rule which should control controversies of this character is more analogous to that which regulates recoveries for injuries resulting from the maintenance of an abatable, or transitory, private nuisance. Under the rule recognized in this state, damages in such cases may be recovered as they accrue, unless the nuisance is a permanent one where all the injury probable may be considered as having been inflicted at the beginning of the offense. Parsons v. Uvalde Electric Light Co., 106 Tex. 212, 163 S. W. 1; I. & G. N. Ry. Co. v. Davis, 29 S. W. 483; Joyce on Nuisances, §§ 459 and 460; Wood on Limitation, § 180. The principle which controls in all such actions, whether for breach of contract or for tort, is that which allows compensation commensurate only with the injury inflicted at the time the cause of action arose. While the remedy must be as broad as the incipient injury, it should be no broader; nor can the consequences of the initial breach be enlarged to include results that are purely speculative and conjectural. This contract imposed upon the appellants a continuing obligation for an indefinite period of time. While the contract is entire in the sense that the promise to refrain from the operation of another gin plant is single, it was subject to separate and distinct breaches. It is not a contract to do a single indivisible thing, but one not to do something that is divisible into separate and distinct acts. The mere erection of a rival gin plant would not give the appellee a cause of action; neither would damages necessarily result from one wrongful act of operation. The loss accrued only from an operation which resulted in the diversion of cotton from the gin owned by the appellee to that owned by the appellants. This might or might not happen from the

running of the competitive plant. It is true that the mere erection and threatened operation of another plan by the appellants would constitute such a menace as to authorize the appellee to seek and secure injunctive relief, but there would be no basis for the recovery of actual damages until appellee's patronage had been interfered with. During that season of the year when cotton gins were idle no damage was being done; hence the actual breach and the resultant injuries were periodical and intermittent.

A contract to refrain during a designated period of time from doing something which may be divided into separate and distinct acts is, in many respects, similar to one which binds the promisor to do something during a fixed period which may be performed at different times by separate and distinct acts. Our courts hold that contracts of the latter kind are not entire in the sense that only one action can be maintained for a breach. Howe v. Harding, 84 Tex. 74, 19 S. W. 363; Jones v. Gammel-Statesman Pub. Co., 100 Tex. 331, 99 S. W. 703, 8 L. R. A. (N. S.) 1197; 1 R. C. L. pp. 351–355; 1 Sutherland on Damages, § 112.

Let us suppose that the appellants had, in violation of their contract, operated their gin for one season and then sold it, or for some other reason had discontinued the business. Such conduct would undoubtedly give rise to a cause of action in favor of the appellee, but the damages recoverable would be limited to the loss which it had sustained during that wrongful operation. Prospective damages could not, under such circumstances, be claimed, because no presumption would be indulged that the offense, which had ceased, would be repeated. Unless it was repeated no further damages could accrue. But suppose that more than four years afterward the appellants should again begin the operation of another rival plant in that community: Can it be said that the appellee would then be barred from bringing another suit for the damages resulting from the second offense? We think not.

[2] By this contract the appellant had not only parted with their gin plant, but also conveyed their good will. While good will was not mentioned in the contract, the character of the transaction was such as to pass it by implication. Didlake v. Roden, 160 Ala. 484, 49 South. 384, 22 L. R. A. (N. S.) 907, 18 Ann. Cas. 430; 12 R. C. L. p. 985; 8 Elliott on Contracts, § 825. To say the least, this contract was susceptible of as many separate and distinct breaches as there were separate and distinct ginning seasons occurring during the period of time the contract was to remain in force. Any other construction in applying a remedy would require the aggrieved party, when the incipient breach occurred, to treat the contract as at an end, notwithstanding it was in terms a continuing obligation. In order to award compensation in a suit prosecuted upon that theory, the court would be compelled to speculate concerning many essential facts. For instance, what rule could be adopted for measuring the time which the plaintiff might elect to continue the operation of its plant? Or who could guess with any approximation to accuracy how much cotton would in future years be ginned in that community, and what portion of it would be diverted by the appellants from the gin owned by the appellee? If the contention of the appellants be correct, such speculations would be required, for the aggrieved party would have a right to claim every dollar it lost by being deprived of the benefits of its contract. The fact that juries would be driven to such extremes in order to adjust legal damages is sufficient to condemn the remedy.

When untrammeled by legislation there is no reason why courts of justice should voluntarily manacle themselves with artificial rules which tend to defeat the very purpose for which they are created. In each controversy of this character that course should be adopted which may, without overturning some other established principle, best meet the ends of justice. That rule for ascertaining and awarding damages should be followed which best enables the court to allow the injured party all the damages he has sustained, without penalizing the offender by awarding more.

[3] Appellants also insist that because a writ of injunction was prayed for and granted in the former suit no damages could be recovered for the period covered by this suit. While the writ of injunction was prayed for in the original case, it was not issued till in 1917, five years after the trial. It was not the fault of the appellee that it was not granted sooner. During that entire time pending the appeal the appellants continued the violation of their contract, to the damage of the appellee, and the latter was powerless to prevent it. The writ of injunction is no substitute for actual damages that have been inflicted as a result of misconduct occurring before the writ is issued.

The judgment is affirmed.