## State *vs.* Thomas A. Pike.

### Cumberland, 1874.—April 7, 1876.

*Indictment. Evidence. Exceptions. Jury. Trial.*

An exception will not lie to the ruling of a judge merely because it is erroneous. To sustain the exception, the party claiming it must show he was aggrieved by the ruling.

In an indictment for manslaughter, by hauling the deceased by the hair of the head, and throwing her violently upon a sofa, *held*, that other acts of violence upon the same evening, may be shown.

A government witness testified on cross-examination that he had been confined in jail, and on the re-direct examination, that it was for "getting tight." The question was objected to on the ground that the record of the court sentencing him, was the only proper evidence. *Held*, admissible, it not appearing that he was confined by the sentence of any court.

An expert was asked whether such a wound as he found might be produced by a hard substance, having no sharp angles or points. And then, whether it might be produced by a substance padded like a sofa. *Held*, admissible.

An expert was asked how long a time two men should give to a *post mortem* examination to arrive at a correct conclusion as to the cause of the death, and whether four hours would be sufficient. *Held*, inadmissible.

Exception was taken to the judge's charge as a whole, not to any particular or specific portion of it. *Held*, not good practice.

A series of requested instructions, embracing, as abstract propositions, correct law, was refused by the court. *Held*, not to be error, if the law arising from the evidence was given by the court, with such fullness as to guide the jury to a correct result.

Requested instructions should be refused if drawn up in such a way as to have the effect of a one-sided argument, although, as abstract propositions of law, they are correct.

The judge, on being informed that the jury were unable to agree, called them into court in the absence of the defendant's counsel, and read to them from a printed volume of Massachusetts reports the opinion of the court on the duty of the jury to endeavor to harmonize their views, and to agree upon a verdict. *Held*, not objectionable.

The defendant, within two days after the verdict, moved for a new trial for newly discovered evidence. *Held*, that the decision of the judge, the motion being addressed to his discretion, was not reviewable by the law court.

On motion for a new trial, the defendant offered to prove, by the affidavit of a juror, misconduct in the jury room. *Held*, inadmissible.

The person killed was first named in the indictment, "Margaret E. Pike," and so named in the clause alleging the killing, but was intermediately styled "the said Margaret." *Held*, sufficient.

ON EXCEPTIONS from the superior court.

INDICTMENT of the defendant for manslaughter of his wife, Margaret E. Pike, at Portland, May, 1874, by seizing and dragging her by the hair of her head, and throwing her with force and violence upon a sofa, giving her mortal wounds, of which she died. The jury, some eight hours after the cause was submitted to them, returned a verdict of guilty. Meanwhile they were called into court, the defendant's counsel not being present, and listened to the reading by the judge of an opinion of the supreme court of Massachusetts, in *Commonwealth* v. *Tuey*, 8 Cush., 1, on the importance of endeavoring to harmonize their views and to agree upon a verdict.

The rulings of the court to which the defendant excepted, appear in the opinion.

*C. P. Mattocks* and *E. W. Fox*, for the defendant.

*C. F. Libby*, county attorney, for the state.

WALTON, J. This case is before the law court on exceptions.

I. The defendant excepts to the refusal of the presiding judge to allow exceptions to one of his rulings. The judge placed his refusal upon the ground that the right to except to that particular ruling had been waived. The facts are these: The defendant was indicted for manslaughter. He first pleaded in abatement; and then, after his plea in abatement had been adjudged bad on demurrer, he pleaded further that he was not guilty. The presiding judge declined to allow exceptions to the ruling upon the plea in abatement, upon the ground, that by pleading over, the defendant had waived his right to except. The defendant then excepted to that ruling. We think the ruling, holding that the defendant, by pleading over, had waived his right to except to the ruling upon his plea in abatement, was clearly erroneous. When a plea in abatement is adjudged bad on demurrer, the judgment is always *respondeat ouster*. By pleading over, the defendant does no more than obey the mandate of the court. To hold that he thereby waives his right to except, would be equivalent to holding that in such cases, a defendant can never except. He must plead over; and if his right to except is thereby waived, then the

conclusion is inevitable, that his right to except is waived in every case. Of course such cannot be the law. We must therefore examine the plea in abatement, (which, being copied into one of the defendant's bills of exceptions, is, in our judgment, properly before us for consideration,) and see if the defendant was aggrieved by the ruling. If he was, the exceptions must be sustained. If he was not, then the exception must be overruled, notwithstanding the ruling was erroneous; for it is well settled, that a ruling, however erroneous, will not sustain an exception, if the excepting party is not thereby injured. On examination, we find that the plea alleges several grounds for quashing the indictment, every one of which is based on a separate and distinct issuable fact. The plea is therefore clearly bad for duplicity; and the ruling of the presiding judge, holding it to be bad, was correct. How, then, was the defendant aggrieved by the refusal to allow exceptions? Very clearly, he was not aggrieved. True, the refusal was based on the erroneous assumption, that by pleading over, the defendant had waived his right to except; still, inasmuch as his plea was clearly bad, and the exceptions, if allowed, could not have been sustained, the defendant was not thereby aggrieved; and upon this ground, the exceptions upon this branch of the case, must be overruled.

II. The government was allowed to introduce evidence to prove that the name of the deceased was Margaret E. Pike. The exceptions state that this evidence was seasonably objected to, "upon the ground that it was nowhere alleged in said indictment, that the name of the person alleged to have been killed, was Margaret E. Pike." We apprehend this objection was made without a careful examination of the indictment; for the indictment does distinctly allege the name of the person killed to be Margaret E. Pike; and of course it was not only the right, but the duty of the government to prove it as averred.

III. The government was allowed to prove acts of violence by the defendant upon the deceased, other than those which it was claimed caused her death. We think the evidence was admissible. It is undoubtedly true, as the learned counsel for the defendant contends, that neither proof of another distinct felony, nor proof

of another distinct assault upon the deceased was admissible. But the evidence in this case was not of that description. It was limited to acts of violence on the same evening, and only a short time before her death; and for aught that appears in the bill of exceptions, was limited to acts which constituted the beginning of the quarrel which resulted in the defendant's throwing his wife upon a sofa so violently, as to cause her death immediately, or in a very short time after. We think the evidence was admissible.

IV. A government witness testified, on cross-examination, that he had been confined in jail; and then, in answer to a question from the prosecuting officer, that he was so confined for "getting tight." The question was objected to upon the ground that the records of the court which sentenced him to jail, was the only proper evidence to prove the offense for which he was confined. It is a sufficient answer to this objection, that it nowhere appears that he was confined in jail by virtue of the sentence of any court. For aught that appears, he may have been confined by a police officer, without any trial or sentence. If so, the evidence was admissible. Nothing appearing to show that the evidence was inadmissible, the objection is not sustained.

V. The government was allowed to ask one of the physicians who made a *post mortem* examination of the deceased, whether such a wound as they found, might have been produced by coming in contact with a body of hard material, where there were no sharp angles or points; whether it might have been produced by a hard substance padded, like a sofa; whether the clot of blood which they found could have existed twelve hours without causing death; and whether the appearance of the extravasated blood in the neck, was an indication of mechanical violence or disease. The information sought to be obtained by these questions is among the ordinary purposes for which medical experts are examined; and we see nothing objectionable in the form of the questions. We think they were properly allowed.

VI. A witness called by the defendant as a medical expert, was asked this question: "For the purpose of arriving at a correct conclusion in the case of the death of a person, where you don't know to your own satisfaction, what caused the death, how long a

time should two men give to a *post mortem* examination?" And the witness was further asked whether four hours would be sufficient. These questions were excluded; and we think, properly. It does not appear that the witness was present at the *post mortem* examination of the deceased; or that he had any knowledge of the case, or the kind, or extent, of the examination needed; and it is not to be assumed that every *post mortem* examination will require the same length of time. The questions were too general; and if the witness was willing to answer them, his answers would have been entitled to no weight whatever. They would have been no more than the opinion of one, who, so far as appeared, had no knowledge on which to base it. We think the questions were properly excluded.

Some other evidence, offered by the defendant, was excluded; but as the defendant's counsel do not refer to it in their argument, we shall not notice it further than to say, that we have examined it, and entertain no doubt that it was properly excluded.

VII. Exception is taken to the judge's charge; not to any particular or specified portion of it, but, in the language of the exceptions, to "all matters stated in the charge." The opinion which this court entertains of such a bill of exceptions will be found in *State* v. *Reed*, 62 Maine, 135, and need not be repeated. It is a sufficient answer to say, that in our judgment, the jury was very fully and accurately charged. The judge stated to them the nature and the elements of the crime with which the defendant was charged; what it was necessary for the government to prove to authorize or justify a verdict of guilty; that the burden of proof was upon the government; that, to sustain that burden, all the elements of the crime must be proved beyond a reasonable doubt; and it seems to us that all this was done in a very full, clear, and impartial manner; and that no other or further instructions were necessary.

It is not error for a court to refuse to give an extended series of instructions, although, as abstract propositions of law, they may be correct, if the law arising upon the evidence is given by the court with such fullness as to guide the jury to a correct result. In fact, requested instructions should be refused, if drawn up in

such a way as to have the effect of a one-sided argument, although, as abstract propositions of law, they are correct. *State* v. *Barnes*, 29 Maine, 561. *Dunn* v. *Moody*, 41 Maine, 239. *Norton* v. *Kidder*, 54 Maine, 189. *Hovey* v. *Hobson*, 55 Maine, 256. *Darby* v. *Hayford*, 56 Maine, 246. *Rumrill* v. *Adams*, 57 Maine, 565. *Bourne* v. *Stevenson*, 58 Maine, 499. *State* v. *Reed*, 62 Maine, 129. *Waite* v. *Vose*, 62 Maine, 184. *State* v. *Watson*, 63 Maine, 128. *Roberts* v. *Plaisted*, 63 Maine, 335. *Drake* v. *Curtis*, 1 Cush., 395. *Kellogg* v. *Northampton*, 4 Gray, 65. *Ins. Co.* v. *French*, 2 Cin., (Ohio) 321. *State* v. *Ott*, 49 Mo., 326. *Porter* v. *Harrison*, 52 Mo., 524. *Adams* v. *Smith*, 58 Ill., 417. *Railway Co.* v. *Whitton*, 13 Wallace, 270.

The foregoing are some of the recent decisions which sanction the right and hold that it is sometimes the duty of the court to withhold requested instructions, when the jury have been already sufficiently instructed; and in several of the cases the practice of preparing requested instructions in such a form, that, if given, they will have the effect of a one-sided argument, is severely censured. The practice is certainly one which ought not to be encouraged.

For the reasons already given, we think the instructions asked for in this case were properly withheld. The jury had already been accurately, and as fully instructed, as the nature of the case required.

VIII. Complaint is made because the presiding judge, on being informed by the jury that they were unable to agree, called them into court, and in the absence of the defendant's counsel, read.to them as instructions, a portion of the opinion of the court in *Commonwealth* v. *Tuey*, 8 Cush., 1. The portion read relates entirely to the duty of jurors to endeavor to harmonize their views, and finally agree upon a verdict, if they can do so without the surrender of conscientious convictions. We see nothing objectionable in the course pursued by the presiding judge. The portion of the opinion read contained such suggestions only as it is always fit and proper to make to a jury when there is danger of a disagreement. The fact that the prisoner's counsel were not present does not appear to have been the fault of the court.

Certainly, there is no rule of law requiring the court to send for counsel who choose to absent themselves while their cases are being considered by the jury. Nor does it appear that their client's case was in the slightest degree prejudiced by their absence.

IX. Having been found guilty by the jury, the defendant, within two days thereafter, moved for a new trial, on the ground of newly discovered evidence. This motion was addressed to the discretion of the presiding judge, and his decision thereon is not reviewable upon exceptions.

X. The defendant then moved for a new trial for alleged errors of the court, and misconduct of the jury. The only alleged error of the court relied upon is the one already considered under head eight; namely, the reading to the jury, in the absence of the prisoner's counsel, of a portion of the opinion of the court in *Commonwealth* v. *Tuey*, 8 Cush., 1. This, as we have already stated, was, in our judgment, no error at all.

To prove the alleged misconduct of the jury, the defendant offered the affidavit of one of the jurors who tried the case. The presiding judge declined to receive the affidavit upon the ground that the law of this state does not permit the verdict of a jury to be impeached by the testimony of the jurors themselves as to what took place in the jury room during their deliberations. We think the ruling of the presiding judge upon this point was correct. This court decided in *Heffron* v. *Gallupe*, 55 Maine, 563; and again, in *Greeley* v. *Mansur*, 64 Maine, 211, that jurors are not competent witnesses to impeach their own verdicts. And see *Woodward* v. *Leavitt*, 107 Mass., 453, where the question is thoroughly examined, and the same conclusion reached as had been previously arrived at by this court.

This motion, like the preceding, was addressed to the discretion of the presiding judge; and no error in law appearing, his decision upon the facts is conclusive.

XI. The defendant next moved in arrest of judgment for alleged defects in the indictment. The indictment contains two counts. At the beginning of each count, when the name of the deceased is first mentioned, she is called Margaret E. Pike. She is afterwards referred to, as "the said Margaret." It is claimed

that the indictment is fatally defective, because her full name is not given every time she is mentioned. We think the indictment good as it is.

It is undoubtedly true, that in indictments for manslaughter, as well as in indictments for murder, the name of the deceased should be correctly stated. But when the name has been once fully and accurately stated, we can perceive no possible objection to afterward referring to the deceased, as "the said ——," giving the christian name only, provided there is no other person mentioned in the indictment, of the same christian name, to whom the words "the said ——," could refer. We think the motion in arrest of judgment, was properly overruled.

We believe we have now considered all the questions raised by the exceptions in this case ; and our conclusion is, that the entry must be,                      *Exceptions overruled.*

*Judgment on the verdict.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and PETERS, JJ., concurred.