### WILLIAM CARROLL v. THE STATE.

#### *No. 678. Decided November 18.*

1. **Impeachment of Witness—Collateral Matter Tending to Degrade, how far Admissible.**—While the question as to whether a witness can be impeached by requiring him to testify and disclose collateral matter as to his personal history tending to his disgrace, but going to affect his credibility, has been a subject of much discussion and contrariety of decision, it appears to be now settled, in England, that where a witness is cross-examined he may be asked any question which tends, first, to test his accuracy, veracity, or credibility; or second, to shake his credit by injuring his character; and the ruling in many of the American States and in Texas is, that " he may be compelled to answer any such question, however irrelevant to the facts in issue, and however disgraceful to himself, except where the answer might expose him to a criminal charge." See opinion for a discussion in extenso of the subject.

2. **Same — Illustration. —** Where it should appear, on cross-examination, that the witness had a previous criminal experience, as for instance that he had spent part of his life in jail, or was convicted, or had suffered some infamous punishment, or had been in jail on a criminal charge, it would tend to shake or impair his credit, and the jury should have such information concerning him. Following Lights v. The State, 21 Texas Criminal Appeals, 309.

3. **Same—Witnesses on Bail to Answer for a Crime.**—No reason is seen why the above rules are not applicable to the case of a witness who is charged with crime, but has been permitted to give bail for his appearance to answer said crime. The presumption of innocence is certainly no greater in his favor than in the case of one imprisoned on account of inability to give bail.

4. **Same — Limitation and Restriction as to such Examination of a Witness.**—Where a witness is permitted to be examined as to collateral matters tending to degrade him, it is essential to a true estimate of his character by the jury, and it is the duty of the court to so limit and restrict the examination as that the inquiry relates to transactions comparatively recent, and which bear directly upon the present character of the witness.

5. **Same.**—When a witness is asked a question, on cross-examination, about a matter tending to disgrace him, which is collateral to the main issue, and only affecting his credit, ordinarily his answer is binding, and contradictory evidence is inadmissible to impeach him upon such matter.

6. **Case Criticised.**—See opinion for adverse criticism upon the doctrine announced in Boon v. Weathered, 23 Texas, 684.

APPEAL from the County Court of Bastrop. Tried below before Hon. R. W. SIDDALL, County Judge.

Appellant was prosecuted by information charging him, jointly with one Sidney Alexander, with the theft of a pair of spurs, of the value of 75 cents.

Appellant's motion for a severance having been granted, the prosecution as to the codefendant Alexander was dismissed, on motion of the county attorney, and defendant placed alone upon trial, which resulted in his conviction, with his punishment assessed at thirty days imprisonment in the county jail. No general statement of the case is necessary.

The circumstances attendant upon the cross-examination of defendant's witness Frank Glass, and the matters pertaining thereto, are fully shown by defendant's bill of exceptions, as follows:

"Frank Glass, a witness for defendant, was asked on cross-examination by the State, the following questions: 'Are you not charged with some offense in this court?' To which question defendant objected, on the ground that the same was irrelevant, immaterial, and incompetent. That thereupon the State's attorney stated to the court, that the purpose of the question was to impeach the character of the witness; and the court thereupon overruled the objection of defendant, to which action of the court he then and there excepted. The witness then answered, 'I am.' The State's attorney then asked the question, 'What are you charged with?' To which question the defendant objected, on the ground that the same was irrelevant and incompetent, and that it was not competent for the State to impeach the character of the witness otherwise than by an inquiry into his general reputation for truth and veracity in the neighborhood in which he lived; which objections being overruled by the court, defendant excepted, and the witness replied, 'I am charged with cotton stealing.' Defendant thereupon moved the court to exclude all of said questions and answers, and withdraw same from the consideration of the jury, on the ground that the same was irrelevant, immaterial, and incompetent, and that it was not competent for the State to impeach the character of the witness otherwise than by an inquiry into his general reputation for truth and veracity; which objection being overruled, the defendant excepted.

"That thereafter, in the argument to the jury, the State's attorney said: 'Gentlemen of the jury, they came here attempting to get this man out; and what kind of evidence do they bring to you? They bring Frank Glass to swear him out; Frank Glass, who himself stands charged with theft.' To which language of the State's attorney defendant excepted, on the ground that the testimony of the said Frank Glass, elicited by the county attorney for the purpose of impeachment, as above set forth, was irrelevant and immaterial, and that it was improper and highly

prejudicial to the defendant's rights that the same should thus be commented upon; which objections being overruled, defendant excepted, and here presents his bill of exceptions.''

*I. P. Fowler* and *Jones & Garwood*, for appellant.—It is not competent to impeach the credibility of a witness otherwise than by an inquiry into his general reputation for truth and veracity in the community where he resides.　1 Greenl. on Ev., 14 ed., sec. 461; Best on Ev., 633, 634.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—Appellant was convicted of theft of a pair of spurs, and his punishment assessed at one month imprisonment, from which he appeals.

Appellant complains, that the court erred ·in permitting the State to prove, over his objection, by Frank Glass, a witness for appellant, that he, the said Glass, was then under indictment for theft.

The objection made was, that a witness could be collaterally impeached only by evidence of his general reputation for truth and veracity in the neighborhood in which he lives.

While the code declares that one may impeach his own witness in *any* way except by proving his bad character (Code Criminal Procedure, article 755), it is silent as to the methods by which one may attack the credibility of a witness offered by the opposite party.　It simply refers us to the rules of evidence known to the common law for guidance. Code Crim. Proc., art. 725.　Turning to the source, we find that of the various modes of impeaching a witness this alone has been the subject of much opposition and discussion; that is, whether a witness can be compelled to answer a question degrading him, collateral to the main issue, but relevant to his credit.　In other methods of impeachment, the question is as to the *application* of the rule.　In this, the existence of the rule is denied.　It seems, however, to be conceded, that if the question is relevant to the main issue in the case, the witness upon cross-examination is bound to answer, however degrading it may be to him.　It is where the evidence is not relevant to the issue, but only goes to affect his credit, that the authorities can not be reconciled.　1 Best on Ev., 130; 1 Greenl. on Ev., sec. 459; Whart. Crim. Ev., 8 ed., 474.

We may therefore follow the authorities whose reasoning appeals strongest to our judgment, and adopt that rule which tends to elucidate the truth, which is the object of all rules of evidence.

Now, while it is true that the question '' has never been solemnly settled,'' as stated by Mr. Greenleaf (1 Greenleaf on Evidence, section 459), yet eminent judges, at nisi prius trials, began at an early day to permit

such questions to be asked, and compelled the witness to answer them. Whart. Crim. Ev., 474. Lord Eldon, in speaking of this practice, thus states the law in his day: "A party can not be called upon to criminate himself; it used to be said a party could not be called on to discredit himself, but in modern times courts have permitted questions, to show from transactions not in issue, that the witnesses are of impeached character, and therefore not so credible."

So that it would seem that though the olden authorities were against the practice (1 Phillips on Evidence, 289, 294), yet the current of authority soon changed in England and America. Indeed, in his digest of the law of Evidence, Sir James Stephen states the rules of cross-examination as follows: "Where a witness is cross-examined, he may be asked · any question which tends (1) to test his accuracy, veracity, or credibility, or (2) to shake his credit, by injuring his character. He may be compelled to answer any such question, however irrelevant to the facts in issue, and however disgraceful to himself, except where the answer might expose him to a criminal charge." Willson's Crim. Stats., sec. 2511. This character of cross-examination is permitted upon the theory, that where a man's life or liberty depends upon the testimony of another, it is of the highest importance that they whom the law makes the exclusive judges of the facts and the *credibility* of the witnesses, should know how far the witness is to be trusted. They ought to know his surroundings and status, so as not to give to one belonging to the criminal class the same credit as he whose character is irreproachable. If, therefore, it should appear on cross-examination, that the witness had a previous criminal experience, or spent a part of his life in jail (Real v. The People, 42 New York, 270; Thompson on Trials, 458; 1 Greenleaf on Evidence, 455), or was convicted, or has suffered some infamous punishment, or had been in jail on a criminal charge (1 Best on Evidence, 130), it would tend to shake or impair his credit, and the jury should have such information. While it may seem hard to compel a witness to commit perjury or destroy his own standing before the court, it would seem absurd to place the feelings of a profligate witness in competition with the substantial rights of the parties in the case.

But it is to be remembered, and all the authorities unite in the statement, that the examination must be kept within bounds by the court; that the question should only be permitted where the ends of justice clearly require it, and the inquiry relates to transactions comparatively recent, bearing directly on the *present* character of the witness, and is essential to the true estimation of his testimony by the jury. 1 Greenl. on Ev., sec. 459; Whart. Crim. Ev., secs. 474, 476; Taylor on Ev., secs. 1314, 1315. It should be the care of the trial judge to confine the interrogatory to matters coming within the said limitations, and promptly suppress all inquiry into matters not recent nor relevant to credit, otherwise the witness box

would become a source of scandal and an offense.  It is also to be observed, that when a witness is asked a question which tends to disgrace him, and answers the question, the cross-examining party is, in general, bound by the answer, if collateral to the issue and only going to the credit of the witness.  For to admit contradictory evidence would raise collateral and independent issues not relevant to the main question.  1 Greenl. on Ev., 455; 2 Phil. on Ev., 950; Best on Ev., 200.

The doctrine contended for by appellant, which, in attacking credibility, limits inquiry to the general reputation of the witness for truth and veracity in his neighborhood, is as unsatisfactory in theory as it has been in practice.  The proposition announced in Boon v. Weathered, 23 Texas, 684, 686, that one of vicious character "may still preserve the priceless virtue of truth, though every other virtue is gone," is not the teaching of human experience.  Such a case would be deemed an exception, so marked as should require the fact to be affirmatively shown. Among the dissolute and degraded we do not, naturally, seek nor expect to find this best characteristic of manhood.  Without proof to the contrary the jury may fairly assume, that from the immoral and criminal character truth has fled with other virtues.  While, therefore, the method of impeachment contended for is one of the recognized modes, we see no reason why it should be exclusive.  We think the jury may reach, in many cases, a more satisfactory estimate of a witness' character from admissions drawn from his own lips upon cross-examination, than by impeaching his general reputation by *other* witnesses—a method seldom understood by even intelligent witnesses, and too often made the opportunity of malice and revenge.  For experience clearly demonstrates, that in most efforts to swear away the character of a witness, animosity or injury is the incentive or cause of the most positive impeaching testimony.

Under these views, we do not think the court erred in permitting the question to be asked.  Again, this question of collateral impeachment came before this court in the Lights case, 21 Texas Criminal Appeals, 309, in which it was held competent to discredit a witness by asking him if he had not been in the penitentiary.  And the court expressly overruled Ivey's case, in 41 Texas, 35, which held a witness could not be compelled to answer "whether he had not just come out of jail to testify?"  The Lights case held such a question clearly admissible, citing Wharton's Criminal Evidence, 474, and Real v. The People, 42 New York, 270, in which the doctrine is laid down, that a witness, on cross-examination, may be asked "whether he has been in jail, penitentiary, or other place that would tend to impair his credit?"  The Lights case has been repeatedly followed in this State.  Woodson case, 24 Texas Cr. App., 162; Williams' case, 28 Texas Cr. App., 305.

Now, it seems from the foregoing authorities that a witness may be interrogated as to his having been in the penitentiary or jail, whether on

conviction or on a preliminary charge.   But it is the nature of the charge rather than from the imprisonment that may affect credit; and it certainly does not seem clear why the fact of a person being able to give bond and thereby escape imprisonment should bar an inquiry into his credibility. The presumption of innocence is certainly no greater in favor of one under bond  than one who, from his inability to give bond, is compelled  to undergo imprisonment.   We do not think the court erred in  permitting the question to be asked of the witness Glass.

There are no other questions that need be considered.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.