McCoy vs United States.

Opinion rendered November 24, 1906.

(98 S. W. Rep. 144).

1. *Witnesses—Cross Examination of Accused—Extent of.*

When the defendant chooses to make himself a witness he is subjected to the same rules governing as to other witnesses, can claim no exemption or protection not accorded other witnesses, nor can he be subjected to any different methods on cross-examination nor pressed with any more severity or humility than any other witness in the case. And to affect his credibility he may be asked whether he has been in prison on other charges, suborned testimony in the same case, and whether he has been concerned in other crimes part of the same system.

2. *Criminal Law—Jury—Questions as to Division.*

It is error for the court to ask a jury, which has reported that it cannot agree, how it was divided; not meaning by such question how many stand for conviction and how many for acquittal, but meaning the proportion of the division, not which way the division may be.

3. *Same—Jury.*

It was the province of the jury to determine, when the testimony of the witnesses is contradictory which is entitled to credit, and to find accordingly, and the Appellate Court will not review the evidence for the purpose of passing upon the correctness of their conclusions.

Appeal from the United States Court for the Central District of the Indian Territory; before Justice Thos. C. Humphry May 5, 1905.

William McCoy was convicted of larceny, and he appeals. Reversed and remanded.

On February 10, 1904, the defendant (appellant) was indicted by the grand jury at Atoka in two counts: First, for the larceny of 17 hogs from one John M. Cole; and second, for receiving 17 hogs, knowing the same to have been previously stolen. On said day defendant was arraigned and pleaded not guilty to said indictment. On May 3, 1905, this cause was tried before a jury, who on May 4, 1905, returned the following verdict:

"We, the jury, duly impaneled and sworn in the above-entitled action, do find from the law and the evidence the within-named defendant, Wm. McCoy, guilty in manner and form as charged in the within indictment of larceny. Ben Byers, Foreman."

"We, the jury, duly impaneled and sworn in the above-entitled action, do find, from the law and the evidence the within-named defendant, Wm. McCoy, not guilty of receiving stolen property. Ben Byers, Foreman."

On the same day the defendant filed motion for new trial, which was subsequently overruled by the court, and defendant, by writ of error, brought the case to this court.

*J. G. Ralls* and *J. H. Chambers*, for appellant.

*T. B. Latham*, U. S. Dist. Atty.

TOWNSEND, J. (after stating the facts). The appellant has filed five assignments of error, as follows: "(1) The court erred in overruling the objections of counsel for defendant to the following questions asked the defendant while a witness, to wit: 'Q. How many larceny cases have there been here against you? A. I don't know of but one outside of this

one. Q. What was that—cotton-stealing case? A. Yes, sir.' (2) The court erred in inquiring of the jury, after the case had been submitted to the jury and the jury had retired to consider of their verdict, and requiring the jury to answer as to how the jury stood, which question was as follows: 'Gentlemen of the jury, I want to know how the jury stands; not as to how many stand for conviction and how many for acquittal, but as to how you stand as to number.' 'Answer by the foreman: 'We stand 10 to 2.' (3) The court erred in further instructing the jury, after interrogating the jury as to how they stood as to number, as follows: 'The only mode provided by our Constitution and laws for deciding questions of fact in criminal cases is by the verdict of a jury. In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which a juror agrees must, of course, be his own verdict, the result of his convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard, and deference to the opinions of each other. You should consider that the case must be at some time decided; that you are selected in the same manner and from the same source from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to 12 men more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And, with this view, it is your duty to decide the case, if you can conscientiously do so. In order to make a decision more practicable, the law imposes the burden of proof on one party or the other in all cases. In the present case, the burden of proof is upon the common-wealth to establish every part of it, beyond a reasonable doubt; and if, in any part

of it, you are left in doubt, the defendant is entitled to the benefit of the doubt, and must be acquitted. But, in conferring together, you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. And, on the other hand, if much the larger number of your panel are for conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one, which makes no impression upon the minds of so many men, equally honest, equally intelligent with himself, and who have heard the same evidence with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if the majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to, doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated.' (4) The court erred in overruling the motion of the defendant for a new trial. (5) The court erred in not granting a new trial to the defendant."

The first assignment of error involves the question, to what extent can the prosecution go in the cross-examination of a defendant in a criminal case, for the sole purpose of affecting his credibility as a witness, when he takes the stand in his own behalf to testify? The defendant choosing to make himself a witness, taking the stand as a witness, is subjected to the same rules governing as to other witnesses, can claim no exemption nor protection not accorded other witnesses, nor can he be subjected to any different methods on cross-examination, nor pressed with any more severity and humility than other witnesses in the case. "It has been ruled, also, that, to affect his credibility, he may be asked whether he has been in prison on other charges, whether he has suborned testimony in the particular case," and whether he has been

concerned in other crimes, part of the same system. Whar. Cr. Ev. § 432. In this country there has been some hesitation in permitting a question, the answer to which not merely imputes disgrace, but touches on matters of record, but the tendency now is, if the question be given for the purpose of honestly discrediting a witness, to require an answer. Id. 474, and the following footnotes: "In Real vs People, 42 N. Y. 270, Grover, J., said: 'My conclusion is, that a witness, upon cross-examination, may be asked whether he has been in jail, the penitentiary, or state prison, or any other place that would tend to impair his credibility, and how much of his life he has passed in such places. When the inquiry is confined as to whether he has been convicted, and of what, a different rule may perhaps apply. * * * The extent of the cross-examination of this character is somewhat in the discretion of the court, and must necessarily be so to prevent abuse. In State vs Pike, 65 Me. 111, it was held that a witness, having testified on cross-examination that he had been in prison, could be asked what this was for. In State vs Huff, 11 Nev. 19, it was held that a witness could only be asked as to convictions that affect credit, and not as to one for assault and battery.' Sir James Stephen, in his Digest of the Law of Evidence, expounds the law as follows: 'When a witness is cross-examined, he may be asked any questions which tend to test his accuracy, veracity, or credibility, or to shake his credit by injuring his character. But, even on cross-examination, a witness cannot ward off answering a question material to the issue on the ground that it imputes disgrace to himself, if such disgrace does not amount to crimination.' No doubt such questions may be oppressive and odious. They may constitute a means of gratifying personal malice of the basest kind, and of deterring witnesses from coming forward to discharge a duty to the public. At the same time it is impossible to devise any rule for restricting

the statute which at present exists on the subject without doing cruel injustice. Whar. Cr. Ev. 473. 'In this country there has been some hesitation in permitting a question the answer to which not merely imports disgrace, but touches on matters of record, but the tendency now is, if the question be given for the purpose of honestly discrediting a witness, to require an answer.' Id. 474. According to many authorities it is competent to ask a witness if he has been confined in jail on a criminal charge. Gillett on Indirect and Collateral Ev. § 91; and Burdette vs Commonwealth, 93 Ky. 76, 18 S. W. 1011; State vs Taylor, 118 Mo. 153, 24 S. W. 449; State vs Ezell, 41 Tex. 35." In Hollingsworth vs State, 53 Ark. 387, 14 S. W. 41, the court said: "It may be conceded that the scope of legitimate cross-examination is not clearly defined. It rests largely in the discretion of the trial court." As to the admissions on cross-examination of the witnesses, he says: "That such a life tends to discredit the witness no one can deny; when disclosed on cross-examination, it is exclusively for the jury to determine, whether any truth can come from such source, and if so, how much. The right to impair the evidence of a witness by cross-examination must not be confounded with the right to impeach a witness by evidence introduced by the opposite party. The former may be exercised within a more extended range than the latter. It has always been held that, within reasonable limits, a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents. The court has a discretion as to how far propriety will allow this to be done in a given case, and will or should prevent any needless or wanton abuse of the power. But within this discretion, we think a witness may be asked concerning all antecedents which are really significant, and which will explain his credibility." Wilbur vs Flood, 16 Mich. 40, 93 Am. Dec. 203. And, in conclusion, touching the testimony as to the evidence brought out by cross-examination of these

two witnesses, the court said: "In such a case we do hold that such answers shed an important light on the character of the witness, proven for the jury's guidance in determining the value of his evidence," and reversed the case because of the erroneous instruction. This same principle of law is sustained by Justice Battle, of the Arkansas Supreme Court, wherein he says: "As a general rule, a witness is not compellable to answer a question when the answer to it will tend to expose him to a penal liability, or to take any kind of punishment, or to a criminal charge. When such questions are asked, it is the duty of the court to inform the witness of his right to decline to answer, but it should not prevent him from answering if he chooses. But this rule does not apply to defendants in criminal cases as to accusations against them, when testifying in their own behalf. In such cases they are required to testify as to the charge in the same manner as other witnesses." Holder vs State, 58 Ark. 473, 25 S. W. 279. In Oxier vs United States, our own court (38 S. W. 333), Judge Lewis delivering the opinion of the court, said: "As to the question whether a witness could be asked in cross-examination if he had been arrested for larceny, we concur in the conclusion of the trial judge that such question may be asked; that the answer of the witness cannot be contradicted where the question is simply for the purpose of affecting his credit; and that the witness in such case may claim his privilege not to reply, if he choose. This conclusion is believed to be supported by the better reason, is approved by all the text-writers, and by the weight of judicial opinion." 1 Best, Ev. § 130; 1 Greenl. Ev. § 459; 1 Thompson, Trials, § 458; Carroll vs State (Tex. Cr. App.) 24 S. W. 100; Brandon vs State, 42 N. Y. 265; State vs Taylor (Mo. Sup.) 24 S. W. 449. From the authorities cited it is our opinion that the first assignment is not well taken.

The second assignment is as follows: "The court erred in inquiring of the jury, after the case had been submitted

to the jury, and the jury had retired to consider of their verdict, and requiring the jury to answer, as to how the jury stood, which .question was as follows: 'Gentlemen of the jury, I want to know how the jury stands; not as to how many stand for conviction and how many for acquittal, but as to how you stand as to number.' Answer by the foreman: 'We stand. 10 to 2.'" In the case of Burton vs United States, 196 U. S. 283, 25 Sup. Ct. 243, 49 L. Ed. 482, the court holds that it is error to inquire of the jury how they stand. In that case (page 469 of 49 L. Ed., page 249 of 25 Sup. Ct., page 305 of 196 U. S.) the court stated to the jury as follows: "I gather from this letter, Mr. Foreman, what I may be incorrect about. I would like to· ask the foreman of the jury how you are divided. I don't want to know how many stand for conviction and how many for acquittal, but to know the number who stand one way and the number who stand another way. I would like the statement from the foreman." The foreman answered: "Eleven to one." On page 490 of 49 L. Ed., page 250 of 25 Sup. Ct., page 307 ·of· 196 U. S., the court, speaking of that invasion of the secrecy of the jury, says: "We must say, in addition, that a practice ought not to grow up of inquiring of a jury, when brought into court because unable to agree, how the jury is divided; not meaning by such question how many stand for conviction or how many stand for acquittal, but meaning the proposition of the division, not which way the division may be. Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said without asking for the fact as to the proportion of their division, and we do not think that the proper administration of the law requires such knowledge, or permits such a question on the part of the presiding judge.

Cases might be easily imagined where a practice of this kind might lead to improper things, and for this reason it ought not to obtain." The court in that case had already held that, for errors previously considered, the case should be reversed, and evidently did not deem it necessary to say that this practice should be considered reversible error, but the court says: "We do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge." We therefore deem it our duty to reverse this case.

Appellant says that the third assignment is sufficiently discussed under the second assignment.

Under assignments 4 and 5, it is contended that there was not sufficient evidence to sustain the verdict. "It is urged here that the verdict of the jury was contrary to the evidence. The testimony of the witnesses was conflicting and contradictory. It was the province of the jury to determine which of them was entitled to credit, and to find accordingly. This court will not review the evidence for the purpose of passing upon the correctness of their conclusions." Holt vs State, 47 Ark. 199, 1 S. W. 61, citing Mains vs State, 13 Ark. 285.

Reversed and remanded.

Gill, C. J., and Clayton and Lawrence, JJ., concur.